### ABRAHAM LINCOLN LIFE INS. CO. v. HOPWOOD.

No. 6859.

Circuit Court of Appeals, Sixth Circuit.

Jan. 17, 1936.

pellee had acted as an intermediary or broker in consolidating and merging insurance companies. On September 30, 1929, he sent a form letter to twelve or fifteen insurance companies stating that the president of a life insurance company had requested him to secure one or two other life insurance companies to merge with his corporation, and asking them if they would be interested in a merger or a sale of their properties. The letter stated that the writer's commission for effecting a merger would be 5 per cent. of the sale price. One of these letters was addressed to H. B. Hill, president of the appellant, an Illinois corporation of Springfield, Ill. Another was sent to Hereford, president of the Springfield Life Insurance Company, also of Springfield, Ill. On October 3 Hill wrote to the appellee stating that appellant was not interested in a sale of its property and assets, but would be interested in purchasing the control of a medium sized company itself. On October 8 appellee telegraphed Hill asking him if he would be interested in a merger with the Kansas Life Insurance Company. Hill replied the next day informing appellee that, before considering the question, he would like to have an interview with the appellee or with Dorsey, the president of the Kansas Company. He informed appellee that he would be in Cincinnati the following week to attend the "American Life Convention," and, if appellee and Mr. Dorsey were there, would confer with them. Hill met the appellee in Cincinnati. Appellee testified that in the course of their discussion he said to Hill, "Now, Mr. Hill, in order that there may not be any misunderstanding, is it agreeable and understood with you that you will pay me the usual commission if I find a company for you which is satisfactory and which you buy or merge or reinsure?" and Hill replied that the appellant would pay the customary commission. Hill said that neither of these statements was made, that, while they were talking, Dorsey approached them and was introduced to the appellee by Hill with a statement to the effect that they had just been discussing the purchase of Dorsey's company by the appellant, to which Dorsey replied that neither appellee nor any one else had any right to sell the Kansas Company, after which the subject was changed and the appellee excused himself and left.

On November 6, after his return to Columbus, the appellee received a letter from Hereford, in which it was stated that

W. E. Sampson, of Springfield, Ill. (Doyle, Sampson & Giffin, of Springfield, Ill., and Arnold, Wright, Purpus & Harlor, of Columbus, Ohio, on the brief), for appellant.

Carrington T. Marshall, of Columbus, Ohio (C. C. Williams and Simeon Nash, both of Columbus, Ohio, on the brief), for appellee.

Before MOORMAN, HICKS, and SIMONS, Circuit Judges.

MOORMAN, Circuit Judge.

For several years before the occurrences giving rise to this litigation the ap-

the Springfield Company would consider a merger with another company provided the merger could be made on a satisfactory basis and the officers of the Springfield Company would be officially connected with the new organization. This was a reply to appellee's form letter of September 30. Two days later the appellee telegraphed asking Hill to telephone him. The next day he wrote to Hill stating that he had a good proposition, but hesitated to put it in writing, and inquiring whether Hill would be in Columbus the next week. Apparently he had written to Hill in regard to the Federal Casualty Company prior to his receipt of Hereford's letter. On November 12 Hill wrote advising that he had been delayed in answering appellee's letter of November 2 because he and his associates wanted to give some consideration to the advisability of negotiating for the business of the Federal Company. He also referred to appellee's letter of the 9th, stating with reference thereto that appellee need not hesitate to write about the matter because "we will not betray any confidence." On November 14 appellee replied stating that it was the Springfield Company he had in mind and inquiring whether the appellant would be interested in a merger with that company. Again he asked Hill to call him on the telephone. On November 22 Hill wrote to appellee saying that on his return to his office after several days absence he had found the appellee's communications of the 14th and 15th. He stated with reference to the Springfield Company that the officers of that company "are particularly good friends of the officers of this company," and "we are quite sure they would not be interested in any kind of a proposition such as you outline." He also stated that, if that company were interested, his company would be interested, but reiterated that, knowing the officers of the Springfield Company as he did, he was sure a proposition of the kind suggested by the appellee would not appeal to them. The letter then proceeded to discuss negotiations for the Federal Company. To this appellee replied, saying, "I know that Mr. Hereford, President of the Springfield Life Insurance Company of Springfield, Illinois, is desirous of a merger," but he insists that his officers and executives must be officially identified with the new organization. He suggested that the matter be presented to Mr. Hereford by Hill in a diplomatic manner or, as an alternative, that the appellee take up the proposition with Hereford. On November 30 Hill replied, and, after informing appellee of a visit to Detroit to discuss a merger with the Federal Company, stated that the officers of his company had had several friendly discussions with the officers of the Springfield Company, and they did not believe there was any possibility of the two organizations getting together. After the receipt of this letter by the appellee, there was no further correspondence in regard to the Springfield Company. There was correspondence about other companies, and this continued up to the date of the taking over of the Springfield Company by the appellant. With the exception of appellee's form letter of September 30 and Hereford's reply thereto of November 6, there was never any communication between the appellee and the Springfield Company. The appellant took over the Springfield Company February 14, 1931, and on September 12, 1931, appellee wrote to Hill making claim for commissions at the usual rate for bringing about the merger. Hill replied that appellee had nothing to do with the taking over of the Springfield Company and that the appellant owed him nothing. The appellee then sued and recovered judgment on the contract which he claims he made with Hill in Cincinnati in October of 1929.

The appellant concedes that there is substantial evidence to show that Hill and the appellee entered into a contract in Cincinnati as alleged in the petition, but it contends that the trial court should have directed a verdict for it at the conclusion of the evidence, because, first, it was not proved that Hill had authority to make such a contract, and, secondly, appellee was not the procuring cause of the merger with the Springfield Company. The appellee contends that there is evidence to support the jury's finding on both of these points, and, further, that, if it is lacking as to the first, Hill's authority, the contract is nevertheless binding on appellant because it was ratified by appellant in acting thereunder and accepting the benefits thereof.

■■■ In the absence of express authority given to Hill in the charter or by the board of directors or stockholders of appellant, his right to make the contract sued on was controlled by the laws of Illinois, under which the appellant was organized (Bank of Augusta v. Earle, 13 Pet. [38 U. S.] 519, 10 L.Ed. 274), and the general rule in that state is that a president of a corporation by virtue of his office has au-

thority to make only such contracts for the corporation as are usually and ordinarily made in the course of its business (Bloom v. Nathan Vehon Co., 341 Ill. 200, 173 N.E. 270, 72 A.L.R. 232; Green v. Ashland Sixty-Third State Bank, 346 Ill. 174, 180, 178 N.E. 468). The appellee did not undertake to show any authority given in the charter or by the board of directors or stockholders, but relied upon the authority inhering in the office of president. That authority, as stated, extended no further than the doing of those things which the appellant did in its ordinary and usual course of business, and this manifestly did not include the making of a contract of purchase or merger with another company. Neither in our opinion did it include the making of a contract to pay an intermediary or broker to procure a company to be purchased or with which a merger might be made. Such a contract would have been outside the scope of the ordinary business of appellant. The by-laws of appellant provide that the president shall have general care, supervision, and control of the company's business and operation in all departments, subject only to the board of directors. If this general authorization, added to the powers inhering in the office of president together with the actions of Hill, might be assumed to give rise to a presumption of authority to make the contract, it was at most a rebuttable presumption having no other effect than to place upon the appellant the burden of going forward with its proofs (Lloyd & Co. v. Matthews, 223 Ill. 477, 79 N.E. 172, 7 L.R.A.[N.S.] 376, 114 Am.St.Rep. 346; Green v. Ashland Sixty-Third State Bank, supra); and this the appellant did without leaving room to doubt lack of authority. The same section of the by-laws which gives the president the general control referred to, subject to the board of directors, specifies his duties and limits his powers as to other matters to such as the board of directors "may from time to time confer or prescribe." Thus, in the matter of making contracts such as the one here in issue, Hill was subject to the control and authority of the board of directors, and all of the other officers and directors of appellant testified that they never authorized the contract and never heard of it until after this action was brought. It is clear, we think, that there is no basis in the evidence for an inference that Hill had authority to make it.

■ Although Hill was without authority to make the contract, yet, if the appellant accepted the benefits of it with knowledge of its existence, there was a ratification, and it is binding on the appellant. The burden rested upon the appellee to show ratification. In order to have that question submitted to the jury, it was necessary that appellee introduce evidence of knowledge on the part of appellant of the existence of the contract when it took over the property of the Springfield Company, that is, evidence to show that the board of directors or the stockholders of appellant knew of the contract between Hill and the appellee when they entered into the final agreement with the Springfield Company to take it over. It is contended that an evidentiary inference of this knowledge can be drawn from the making of the merger, together with the circumstance that the officers of appellant were associated together and had frequent meetings to discuss the business of the company. We do not think these facts are sufficient to support an inference of such knowledge on the part of the directors, other than Hill.

■ If, however, it be assumed that the contract with Hill was binding on the appellant, still it was necessary for the appellee to show that his efforts were the procuring cause of the merger, and, in our opinion, there was no substantial evidence for the jury on that issue. The appellee relies upon the information given in his letters of November 14 and 27 of 1929 together with the subsequent execution of the contract with the Springfield Company. Those facts, we think, are not enough to warrant an inference that the appellee's efforts brought the two companies into negotiations resulting in the merger. The appellee received but one letter from the Springfield Company. He never replied to that, never indicated to that company that the appellant wished to buy or form a merger with another company. Upon informing Hill that the Springfield Company might be willing to merge with another company, he was told by Hill it was useless to discuss the Springfield Company as the officers of appellant knew that a merger with that company could not be effected. When the appellee replied to Hill saying that he knew that the Springfield Company wanted a merger, he had no information other than that contained in the only letter he had received from the Springfield Company, and, after

Hill reiterated his first statement, nothing further was done by the appellee. Nothing was proved by the appellee from which it could reasonably be inferred that his efforts put the two companies into communication with each other resulting in the merger. Any suspicion to that effect which might be founded upon the circumstances to which we have referred is dispelled by evidence showing that conferences between the officers of the two companies with a merger in view had been held from time to time for several years beginning back in 1924, were uniformly unsuccessful because neither company wanted to be taken over by the other, and were successful finally only because of their renewal at the request of Hereford, who on account of ill health and advancing years concluded to give up his control of the Springfield Company and to retire from business.

The evidence of appellee's efforts to find other companies which the appellant could buy was pertinent only for the purpose of showing an agreement between Hill and the appellee, but had no bearing upon the other issues: whether Hill had authority to make the agreement or, if not, whether it was ratified by appellant, and, if so, whether the appellee was the procuring cause of the merger with the Springfield Company.

The judgment is reversed, and the cause remanded for proceedings consistent with this opinion.